Troy Law, PLLC
Aaron B. Schweitzer
Tiffany Troy
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------- x

AN CHEN,
*on behalf of himself and others similarly situated,*
Plaintiff,

v.

SUSNJ INC
d/b/a Sushi Express,
MIANNJ INC
d/b/a Mr. Mian Noodle House,
KKNJ INC
d/b/a King Kong Express,
CHUANQIN ZHENG
a/k/a Chuan Qin Zheng
a/k/a Henry Zheng, and
WEN GAO
a/k/a Alex Gao,
Defendants.

---------------------------------------------------------------- x

Case No. 25-cv-18832

**29 U.S.C. § 216(B)**
**COLLECTIVE ACTION &**
**RULE 23 CLASS ACTION**

**<u>COMPLAINT</u>**

**JURY TRIAL DEMANDED**

Plaintiff AN CHEN (hereinafter "Chen" or "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this Complaint against Defendants SUSNJ INC d/b/a Sushi Express (hereinafter "Sushi Express"), MIANNJ INC d/b/a Mr. Mian Noodle House (hereinafter "Mr. Mian"), KKNJ INC d/b/a King Kong Express (hereinafter "King Kong;" hereinafter collectively with Sushi Express and Mr. Mian, "Corporate Defendants"), CHUANQIN ZHENG a/k/a Chuan Qin Zheng a/k/a Henry Zheng (hereinafter "Zheng"), and WEN GAO a/k/a Alex Gao (hereinafter "Gao;" hereinafter collectively with Zheng,

"Individual Defendants;" Individual Defendants hereinafter collectively with Corporate Defendants, "Defendants"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this action on behalf of himself and other similarly situated employees against Defendants for violations of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and of its implementing regulations, 29 C.F.R. §§ 500 *et seq.*; New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. §§ 34:11-56a *et seq.*, and of its implementing regulations, N.J. Admin. C. §§ 12:56 *et seq.*; and of the Internal Revenue Code ("IRC") 20 U.S.C. § 7434, arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and/or practices.
2. Plaintiff alleges pursuant to FLSA that he is entitled to recover from Defendants: (1) unpaid overtime wages, (2) lost wages due to retaliation, (3) liquidated damages equal to, or prejudgment interest on, his unpaid overtime wages and lost wages due to retaliation, and (4) reasonable attorneys' fees and costs.
3. Plaintiff alleges pursuant to NJWHL that he is entitled to recover from Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) lost wages due to retaliation, (4) liquidated damages equal to two times, or prejudgment interest on, his unpaid minimum and overtime wages and lost wages due to retaliation, and (4) reasonable attorneys' fees and costs.
4. Plaintiff alleges pursuant to IRC that he is entitled to recover from Defendants the greater of: (1) five thousand dollars ($5,000.00); and (2) the sum of actual damages sustained as a proximate result of the filing of fraudulent information returns, unpaid overtime wages, the costs of the action, and reasonable attorneys' fees.

## JURISDICTION & VENUE

5. This Court has subject-matter jurisdiction over this controversy over Plaintiff's FLSA and IRC claims under Section 1331 of Title 28 of the United States Code.

6. This Court has supplemental jurisdiction over Plaintiff's NJWHL claims under Section 1367, Subsection (a) of Title 28 of the United States Code, because they are so closely related to Plaintiff's FLSA claims that they form part of the same case or controversy.

7. Venue is proper in the United States District Court for the District of New Jersey pursuant to Section 1391, Subsections (b) and (c) of Title 28 of the United States Code, because Defendants conduct business in the District of New Jersey, and because the acts and omissions giving rise to the claims alleged herein took place within the District of New Jersey.

## PLAINTIFF

8. Plaintiff was employed by Defendants to work as a sushi chef at Sushi Express from on or about November 1, 2022 through on or about January 6, 2024.

9. At all times relevant to this action, Plaintiff was an employee not exempt from receiving overtime under the FLSA and NJWHL.

## DEFENDANTS

### CORPORATE DEFENDANTS

#### SusNJ Inc d/b/a Sushi Express

10. Sushi Express is a domestic profit corporation with a principal place of business, and registered address for service of process, at 1 American Dream Way, #FC313, East Rutherford, NJ 07073.

11. Sushi Express operates a sushi takeout restaurant on Level 3 of the food court in American Dream Mall located in East Rutherford, New Jersey.

12. Throughout the period relevant to this lawsuit, Plaintiff observed Sushi Express had gross monthly revenue between about $40,000.00 and about $90,000.00—on average about $60,000.00, amounting to a gross annual revenue of about $720,000.00.
13. Throughout the period relevant to this lawsuit, Plaintiff observed that Sushi Express purchased, and employees of Sushi Express including Plaintiff handled, goods moved in interstate and/or foreign commerce, including but not limited to ingredients and cleaning supplies.

**MIANNJ INC D/B/A MR. MIAN NOODLE HOUSE**

14. Mr. Mian is a domestic profit corporation with a principal place of business, and registered address for service of process, at 1 American Dream Way, #FC302, East Rutherford, NJ 07073.
15. Mr. Mian operates a noodle-dish takeout restaurant on Level 3 of the food court in American Dream Mall located in East Rutherford, New Jersey.
16. Upon information and belief, throughout the period relevant to this lawsuit, Mr. Mian had gross annual revenue about equal to Sushi Express's, that is, about $720,000.00—and greater than $500,000.00.
17. Upon information and belief, Mr. Mian purchased, and employees of Mr. Mian handled, goods moved in interstate and/or foreign commerce, including but not limited to ingredients and cleaning supplies.

**KKNJ INC D/B/A KING KONG EXPRESS**

18. King Kong is a domestic profit corporation with a principal place of business, and registered address for service of process, at 1 American Dream Way, #FC301, East Rutherford, NJ 07073.

19. King Kong operates a Chinese-American takeout restaurant on Level 3 of the food court in American Dream Mall located in East Rutherford, New Jersey.

20. Upon information and belief, throughout the period relevant to this lawsuit, King Kong had gross annual revenue about equal to Sushi Express's, that is, about $720,000.00—and greater than $500,000.00.

21. Upon information and belief, King Kong purchased, and employees of King Kong handled, goods moved in interstate and/or foreign commerce, including but not limited to ingredients and cleaning supplies.

## INDIVIDUAL DEFENDANTS

### CHUANQIN ZHENG A/K/A CHUAN QIN ZHENG A/K/A HENRY ZHENG

22. Plaintiff knows Zheng known as his "Boss" and as "brother."

23. Zheng hired Plaintiff.

24. Zheng fired Plaintiff.

25. Zheng hired Gao to help him manage Sushi Express, Mr. Mian, and King Kong, and delegated to them the authority to hire and fire other employees.

26. Zheng also hired Gao's predecessor, Wei Zhao, to help him manage Sushi Express, Mr. Mian, and King Kong, and delegated to them the authority to hire and fire other employees.

27. Zheng set Plaintiff's work schedule and those of other employees of Sushi Express.

28. Zheng set Plaintiff's pay rate.

29. Zheng acted intentionally and maliciously and is an employer pursuant to FLSA and NJWHL, and is jointly and severally liable with Sushi Express, Mr. Mian, and King Kong.

### WEN GAO A/K/A ALEX GAO

30. Gao is the General Manager of, and is the day-to-day, on-site supervisor of employees at, Sushi Express, Mr. Mian, and King Kong.

31. Throughout the business day, Gao circulated among and between Sushi Express, Mr. Mian, and King Kong to supervise employees at each location.
32. Gao hired employees at Sushi Express, including but not limited to a sushi chef Plaintiff knew as "Kou Chen," a cashier Plaintiff knew as "A Jie," and a miscellaneous worker Plaintiff knew as "A Shu."
33. Gao fired one sushi chef, whose name Plaintiff does not know (but who isn't "Kou Chen"), from Sushi Express.
34. Gao distributed pay to Plaintiff and other employees of Sushi Express every pay day.
35. Gao was responsible for keeping and maintaining payroll records for Sushi Express.
36. Gao acted intentionally and maliciously and is an employer pursuant to FLSA and NJWHL, and is jointly and severally liable with Sushi Express, Mr. Mian, and King Kong.

## STATEMENT OF FACTS

### CORPORATE DEFENDANTS CONSTITUTE A SINGLE INTEGRATED ENTERPRISE

37. Sushi Express, Mr. Mian, and King Kong are all owned by Zheng.
38. Zheng exercises financial control over Sushi Express, Mr. Mian, and King Kong.
39. Sushi Express, Mr. Mian, and King Kong share staff, including but not limited to their General Manager.
40. Sushi Express, Mr. Mian, and King Kong centralize control of labor relations in the persons of Zheng, and of the common General Manager who derives his authority from Zheng.
41. Sushi Express, Mr. Mian, and King Kong maintained a common inventory pool (including but not limited to soft drinks and mineral water), in a common storage area, located in the American Dream Mall.

42. Employees of Sushi Express, Mr. Mian, and King Kong, including Plaintiff, are all responsible for stocking and restocking soft drinks and mineral water in the common storage area.

43. Sushi Express, Mr. Mian, and King Kong use a single common transport van to transport employees (approximately ten to twelve at a time), including Plaintiff, from Flushing, New York to the American Dream Mall.

44. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Sushi Express, Mr. Mian, and King Kong.

**DEFENDANTS WILLFULLY VIOLATED THE FLSA, NJWHL, AND IRC WITH RESPECT TO PLAINTIFF**

45. Plaintiff was employed by Defendants to work as a sushi chef at Sushi Express from on or about November 1, 2022 through on or about January 6, 2024.

46. Throughout his employment, Plaintiff regularly worked about 70 hours per week: from about 9:30 AM through about 9:00 PM on Mondays, Tuesdays or Wednesdays depending on the week (with either Wednesdays or Tuesday off depending on the week), and Thursdays; from about 9:30 AM through about 10:00 PM on Fridays and Saturdays; and from about 9:30 AM through about 8:00 PM on Sundays.

47. Throughout his employment, Plaintiff was not afforded any *bona fide* meal or rest breaks—ostensibly, Plaintiff was permitted two meal breaks of between 10 and 20 minutes each during the working day, but throughout his ostensible breaks he was on call, such that if a customer required service during Plaintiff's break, he would have to cut his break short to serve the customer.

48. Throughout Plaintiff's employment, Defendants did not keep records of Plaintiff's working time, as required by federal and New Jersey law and regulations.

49. Defendants failed to keep records of Plaintiff's working time in order to mitigate their liability for violations of federal and New Jersey law.

50. Throughout his employment, Plaintiff was paid a base salary of $925.00 per week, plus tips.

51. Throughout his employment, Plaintiff received his salary payments in the form of: a check from Sushi Express for $375.00 gross per week, with payroll taxes withheld, made out to him; a check from Sushi Express for $250.00 gross per week, with payroll taxes withheld, made out to his wife; and $300.00 in cash.

52. Plaintiff's wife did not work at Sushi Express.

53. In 2023 and 2024, Defendants gave Plaintiff pay stubs from Sushi Express to go with the above-described paychecks purporting to show that the checks made out to Plaintiff were for approximately 20 hours of work per week paid at the New Jersey minimum wage, plus enough tips to make up the difference between the amount thus calculated and $375.00; and that the checks made out to Plaintiff's wife were for approximately 15 hours of work per week paid at the New Jersey minimum wage, plus enough tips to make up the difference between the amount thus calculated and $250.00.

54. The hours and tip amounts reported on the above-described paystubs bore no relationship to the reality of Plaintiff's hours worked (in particular, the hours reported, even added together, only amounted to about half of Plaintiff's actual hours worked) or tips received, and were chosen by Defendants to give the desired result of $375.00 gross per week to Plaintiff and $250.00 gross per week to Plaintiff's wife; the hours, moreover, were chosen to always report less than forty hours of work per payee per week and thus avoid triggering payment of overtime.

55. Throughout his employment, Plaintiff received his salary payments every two weeks.

56. Plaintiff received a $300.00 red envelope bonus for Chinese New Year in 2023, and a $500.00 red envelope bonus for Chinese New Year in 2024.

57. Throughout his employment, Plaintiff's salary did not include an overtime premium of one-half times a regular hourly rate for overtime hours.

58. Throughout Plaintiff's employment, despite Plaintiff receiving tips, Defendants were not permitted to claim a tip credit towards the federal or New Jersey minimum wage.

59. At no time during Plaintiff's employment was he furnished with any notice, from Defendants or anyone else, that Defendants intended to claim a tip credit towards the federal or New Jersey minimum wage.

60. At no time during Plaintiff's employment did Defendants maintain a notice posted in a prominent place at Sushi Express, Mr. Mian, or King Kong explaining the federal and New Jersey minimum wage or overtime laws.

61. Throughout Plaintiff's employment, Defendants required him to perform non-tipped work including but not limited to butchering fish, cutting vegetables, and stocking and moving inventory.

62. Throughout Plaintiff's employment, Plaintiff spent about three to four hours per day (on average about 3.5 hours per day), or between about 28% (3.5 hours/day / 12.5 hours/Friday or Saturday) and 33% (3.5 hours/day / 10.5 hours/Sunday) of his working day performing non-tipped work.

63. In 2024, Sushi Express issued Plaintiff a W-2 reflecting the gross amounts, withholdings, and net amounts of the checks made out to him during the year 2023, and omitting the amounts of the checks made out to his wife and the amounts paid by cash.

64. In 2024, Sushi Express issued Plaintiff's wife a W-2 reflecting the gross amounts, withholdings, and net amounts of the checks made out to her during the year 2023, notwithstanding that she never worked for, and never earned pay at, any of the Defendants.
65. In 2023, Plaintiff earned approximately $48,100.00 in salary ($925.00/week * 52 weeks/year), plus tips.
66. However, Defendants falsely reported that Plaintiff had received $15,003.68 in wages and $4,116.18 in tips ($19,119.86 in total), and that his wife had received $10,005.92 in wages and $2,745.04 in tips ($12,750.96 in total), for a combined total of $25,009.60 in wages and $6,861.22 ($31,870.82 in total).
67. Sushi Express incorporated the falsely-reported wages to Plaintiff and his wife into its 2023 annual W-3, annual 940, and annual 1040.

**DEFENDANTS RETALIATED AGAINST PLAINTIFF FOR PROTECTED ACTIVITY**

68. On or about November 23, 2023 at about 11:08 AM, "Kou Chen" informed Plaintiff that Zheng had assigned them to come in one hour early, and that Plaintiff could work overtime.
69. Plaintiff replied that if Zheng expected him to work overtime, he needed to pay an overtime premium.
70. Upon information and belief, "Kou Chen" informed Zheng that Plaintiff wanted to be paid overtime.
71. On or about December 20, 2023, Zheng confronted Plaintiff about his asking for an overtime premium, telling him that it wasn't acceptable to ask for an overtime premium and that no other employee ever asked him for an overtime premium.
72. On or about January 6, 2024, Zheng fired Plaintiff for asking to be paid an overtime premium.
73. "Kou Chen" was not fired, and upon information and belief still works for Sushi Express.

## COLLECTIVE ALLEGATIONS

74. Plaintiff brings his FLSA claims (other than his claim for retaliation) as a collective action pursuant to Section 216(b) of the FLSA, on behalf of all other current and former non-exempt restaurant workers employed by any of the Defendants over the three years preceding the filing of this Complaint, through entry of judgment in this case (the "Collective").

## CLASS ALLEGATIONS

75. Plaintiff brings his NJWHL claims (other than his claim for retaliation), and his IRC claims, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all other current and former non-exempt restaurant workers employed by any of the Defendants over the six years preceding the filing of this Complaint, through entry of judgment in this case (the "Class").
76. The Class members are readily ascertainable. The Class members' number, names, addresses, positions held, hours assigned and worked, and rates of pay are determinable from Defendants' records. Notice can be provided by means permissible under Rule 23.

**NUMEROSITY**

77. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.
78. Although the precise number of such persons is unknown, and the facts on which the calculation of the precise number are presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the Class.

**COMMONALITY**

79. There are questions of law and fact common to the Class which predominate over any questions affecting individual members, including: (1) whether Defendants employed the

Class members; (2) whether the Class members were paid less than the minimum wage; (3) whether the Class members were paid for overtime hours at rates one and one-half times their regular rates; (4) whether Defendants filed information returns inaccurately reporting Class members' compensation; and (5) at what common rate, or rates subject to common method of calculation, were and are Defendants required to pay Class members?

**TYPICALITY**

80. Plaintiff's claims are typical of those claims which could be alleged by any Class member, and the relief sought is typical of the relief that would be sought by any Class member in a separate action.

81. All the Class members were subject to the same policy and practice of denying minimum wage and/or overtime, and of having their wages misreported.

82. Defendants' policy and practice affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member.

83. Plaintiff and the other Class members sustained similar losses, injuries, and damages arising from the same unlawful policy and practice.

**ADEQUACY**

84. Plaintiff is fairly and adequately able to protect the interests of the Class and has no interests antagonistic to the Class.

85. Plaintiff is represented by attorneys who are experienced and competent in representing plaintiffs in both class actions and wage-and-hour employment litigations.

**SUPERIORITY**

86. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual

Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

87. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.

88. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.

89. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

90. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

91. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

92. Upon information and belief, Defendants and other employers throughout the state violate the NJWHL and IRC.

93. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.

94. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.

95. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## CAUSES OF ACTION

### COUNT I.
### Violation of NJWHL—Nonpayment of Minimum Wage
### Brought on Behalf of Plaintiff and the Class Against the Defendants, Jointly and Severally

96. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

97. Section 34:11-56a4(a) of the NJWHL provides that "each employer shall pay to each of his employees wages at a rate of not less than $8.85 per hour as of January 1, 2019 and, on January 1 of 2020 and January 1 of each subsequent year, the minimum wage shall be increased by any increase in the consumer price index for all urban wage earners and clerical workers (CPI-W) as calculated by the federal government for the 12 months prior to the September 30 preceding that January 1, except that any of the following rates shall apply if it exceeds the rate determined in accordance with the applicable increase in the CPI-W for the indicated year: on July 1, 2019, the minimum wage shall be $10.00 per hour; on January 1, 2020, the minimum wage shall be $11.00 per hour; and on January 1 of each year from 2021 to 2024, inclusive, the minimum wage shall be increased from the rate of the preceding year by $1.00 per hour."

98. Throughout the period relevant to this lawsuit prior to January 1, 2023, the New Jersey minimum wage was $13.00 per hour.

99. Between October 1, 2021 and September 30, 2022, the CPI-W exceeded $14.00 per hour and accordingly the New Jersey minimum wage for 2023 was set to $14.13 per hour.

100. Between October 1, 2022 and September 30, 2023, the CPI-W exceeded $15.00 per hour and accordingly the New Jersey minimum wage for 2024 was set to $15.13 per hour.

101. From January 1, 2023 through on or about January 6, 2024, Plaintiff's regular hourly wage, calculated by dividing his weekly salary by his weekly hours worked, amounted to less than the New Jersey minimum wage.

102. Section 34:11-56a25 of the NJWHL provides that "[i]f any employee is paid by an employer less than the minimum fair wage to which such employee is entitled under the provisions of [Section 34:11-56a *et seq.*]… the employee may recover in a civil action the full amount of that minimum wage less any amount actually paid to him or her by the employer… and an additional amount equal to not more than 200 percent of the amount of the unpaid minimum wages… plus costs and reasonable attorney's fees as determined by the court."

103. Defendants knowingly, willfully, and maliciously disregarded the provisions of the NJWHL by failing to pay Plaintiff at least the minimum wage.

**COUNT II.**
**Violation of FLSA—Nonpayment of Overtime**
**Brought on Behalf of Plaintiff and the Collective Against the Defendants, Jointly and Severally**

104. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

105. Section 207(a)(1) of the FLSA provides that "[e]xcept as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

106. Throughout his employment, Plaintiff was paid a weekly salary, which did not include an extra one-half times an hourly rate of compensation for overtime hours.

107. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of… section 207 of this title shall be liable to the employee or employees affected in the amount of their… unpaid overtime compensation… and in an additional equal amount as liquidated damages," and further provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

108. Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA by failing to pay Plaintiff overtime.

**COUNT III.**
**Violation of NJWHL—Nonpayment of Overtime**
**Brought on Behalf of Plaintiff and the Class Against the Defendants, Jointly and Severally**

109. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

110. Section 34:11-56a4(b)(1) of the NJWHL provides that "[a]n employer shall also pay each employee not less than 1 1/2 times such employee's regular hourly rate for each hour of working time in excess of 40 hours in any week [subject to various exemptions]."

111. At no time was Plaintiff an exempt employee.

112. Throughout Plaintiff's employment, notwithstanding that he was actually paid a weekly salary, Defendants purported to pay him an hourly wage.

113. Defendants therefore cannot claim that they classified Plaintiff as an exempt executive or administrative employee, as they cannot show Plaintiff met the salary-basis test.

114. Further, Plaintiff's primary duties at all times were making sushi and performing allied tasks (including butchering fish and cutting vegetables for use in sushi), and he did not regularly supervise or direct the work of two or more other employees.

115. Further, Plaintiff did not have authority over hiring, firing, promotion, or discipline, and did not make any recommendations to management regarding same.

116. Nor was Plaintiff exempt as a professional employee. Plaintiff's work consisted of preparing dishes on a preexisting menu created by others, according to recipes decided by others, and was routine and manual, not requiring the exercise of discretion or independent judgment.

117. Throughout his employment, Plaintiff was paid a weekly salary, which did not include an extra one-half times an hourly rate of compensation for overtime hours.

118. Section 34:11-56a25 of the NJWHL provides that "[i]f any employee is paid by an employer less than the minimum fair wage to which such employee is entitled under the provisions of [Section 34:11-56a *et seq.*]… the employee may recover in a civil action the

full amount of that minimum wage less any amount actually paid to him or her by the employer… and an additional amount equal to not more than 200 percent of the amount of the unpaid minimum wages… plus costs and reasonable attorney's fees as determined by the court."

119. Defendants knowingly, willfully, and maliciously disregarded the provisions of the NJWHL by failing to pay Plaintiff overtime.

**COUNT IV.**
**Violation of FLSA—Retaliation for Protected Activity**
**Brought on Behalf of Plaintiff Against Zheng**

120. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

121. Section 215(a) of the FLSA provides that "it shall be unlawful for any person—… (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint… under or related to this chapter [Chapter 8 of Title 27 of the United States Code, to wit, the FLSA]…."

122. As a remedial statute, the FLSA, including Section 215(a)(3), is broadly construed and encompasses informal and internal complaints, whether written or oral, as long as an employer perceived, rightly or wrongly, that the employee had engaged in protected activity. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7, 17 (2011); *see also Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269–70 (3d Cir. 2022).

123. In this case, Plaintiff demanded to be paid an overtime premium for overtime work, and Zheng fired him about six weeks later.

124. Zheng understood Plaintiff to be asking for wages to which he was entitled under the FLSA.

125. Section 216(b) of the FLSA provides that "[a]ny employer who violates the provisions of section 215(a)(3)… of this title shall be liable for such legal and equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3)… of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."

**COUNT V.**
**Violation of NJWHL—Retaliation for Protected Activity**
**Brought on Behalf of Plaintiff Against Zheng**

126. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

127. Section 34:11-56a24(a) of the NJWHL provides that "[a]ny employer who takes a retaliatory action against any employee by discharging or in any other manner discriminating against the employee because the employee has made any complaint to his employer… that he has not been paid wages in accordance with the provisions of this act… shall… be required… to pay to any such employee in full, all wages lost as a result of such discharge or discriminatory action and an additional amount of liquidated damages equal to not more than 200 percent of the wages lost…."

128. In this case, Plaintiff demanded to be paid an overtime premium for overtime work, and Zheng fired him about six weeks later.

129. Zheng understood Plaintiff to be asking for wages to which he was entitled under the NJWHL.

130. Section 34:11-56a25(a) of the NJWHL provides that "[i]f any employee… suffers a loss of wages or other damages because of a retaliatory action by the employer in violation of the provisions of section [Section 34:11-56a24], the employee may recover in a civil action… any wages lost due to the retaliatory action, and an additional amount equal to not more than 200

percent of the amount of the unpaid minimum wage or wages lost due to retaliatory action as liquidated damages, plus costs and reasonable attorney's fees as determined by the court [and] the employer shall also be required to offer reinstatement in employment to the discharged employee, and take other actions as needed to correct the retaliatory action."

**COUNT VI.**
**Violation of 26 U.S.C. § 7434—Fraudulent Filing of Information Returns**
**Brought on Behalf of Plaintiff and the Class Against the Corporate Defendants, Jointly and Severally**

131. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

132. Section 7434(a) of the IRC provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person filing such information return."

133. Defendants willfully underreported Plaintiff's 2023 compensation to the IRS on his Form W-2.

134. Section 7434(b) of the IRC provides that "[i]n any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of—(1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), (2) the costs of the action, and (3) in the court's discretion, reasonable attorneys' fees."

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and, with respect to his FLSA overtime claim on behalf of the Collective and, with respect to his NJWHL minimum wage and overtime claims and

IRC claim on behalf of the Class, respectfully requests that this Court enter a judgment providing the following relief:

a) Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to the Collective, informing the Collective members of the pendency and nature of this action and of their right to join this action if they believe they were denied overtime wages;

b) Certifying this action as a collective action pursuant to FLSA;

c) Certifying Plaintiff's NJWHL minimum wage and/or overtime claims, and/or Plaintiff's IRC claims, for class treatment under Rule 23 of the Federal Rules of Civil Procedure;

d) Awarding a declaratory judgment that the practices complained of herein are unlawful under FLSA, NJWHL, and IRC;

e) Enjoining Corporate Defendants, their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f) Awarding unpaid minimum wages due under NJWHL to Plaintiff and the Class members; and liquidated damages equal to two times, or prejudgment interest on, such unpaid minimum wages; and reasonable attorney fees and costs of the action;

g) Awarding unpaid overtime wages due under FLSA to Plaintiff and the Collective members, and liquidated damages equal to, or prejudgment interest on, such unpaid overtime wages; and reasonable attorney fees and costs of the action;

h) Awarding unpaid overtime wages due under NJWHL to Plaintiff and the Class members, and liquidated damages equal to two times, or prejudgment interest on, such unpaid overtime wages; and reasonable attorney fees and costs of the action;

i) Awarding lost wages due to retaliation under FLSA to Plaintiff, and liquidated damages equal to, or prejudgment interest on, such unpaid overtime wages; and reasonable attorney fees and costs of the action;

j) Awarding lost wages due to retaliation under NJWHL to Plaintiff, and liquidated damages equal to two times, or prejudgment interest on, such unpaid overtime wages; and reasonable attorney fees and costs of the action;

k) Awarding under the IRC the greater of: five thousand dollars; and the sum of actual damages sustained as a proximate result of the filing of fraudulent information returns, unpaid overtime wages, the costs of the action, and reasonable attorneys' fees; and

l) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rules 38(b) and (c) of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury on all questions of fact.

Dated: Flushing, New York
December 19, 2025

TROY LAW, PLLC

*/s/ Aaron B. Schweitzer*

Aaron B. Schweitzer
41-25 Kissena Boulevard
Suite 110
Flushing, NY 11355
Tel: (718) 762-1324
troylaw@troypllc.com
*Attorney for Plaintiff*